UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RHONDA KAY WHITE,

        Plaintiff,

v.                                      Case No. 14-11492
                                        HON. TERRENCE G. BERG
                                        HON. PATRICIA T. MORRIS

CAROLYN W. COLVIN,
ACTING COMMISSIONER
OF SOCIAL SECURITY,

        Defendant.
_____/

## OPINION AND ORDER ADOPTING
## REPORT AND RECOMMENDATION (DKT. 23)

The Plaintiff Rhonda Kay White applied for social security disability benefits but was denied. Plaintiff appealed but has been denied at each stage of the administrative process, and this denial was upheld by Magistrate Judge Patricia T. Morris's July 30, 2015 report and recommendation (Dkt. 23). In that report, Judge Morris recommended that Plaintiff's motion for summary judgment (Dkt. 19) be **DENIED**, Defendant's motion for summary judgment (Dkt. 22) be **GRANTED**, and that the findings and conclusions of the Commissioner be **AFFIRMED**. Plaintiff now objects to Magistrate Judge Morris's report and recommendation, and those objections are currently before the Court.

The law provides that either party may serve and file written objections "[w]ithin fourteen days after being served with a copy" of the report and recommendation. 28 U.S.C. § 636(b)(1). Plaintiff filed timely objections (Dkt. 24) to

the report and recommendation, and Defendant timely filed a response, arguing that Plaintiff's objections are waived because they articulate no more than a "broad assertion that the ALJ should have weighed the evidence differently" (Dkt. 25, p. 1). Although Plaintiff's objections are less than thoroughly drawn, the Court will address them because they are not so generalized as to constitute waiver.

A District Court must conduct a de novo review of the parts of a report and recommendation to which a party objects. *See* 28 U.S.C. § 636(b)(1). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

The Court has reviewed Magistrate Judge Morris's report and recommendation, and Plaintiff's objections to it. For the reasons explained below, Plaintiff's objections are **OVERRULED**, and the report and recommendation is **ACCEPTED** and **ADOPTED** as the Court's findings of fact and conclusions of law. Consequently, the decision of the Commissioner denying Plaintiff's disability claim is **AFFIRMED**.

## I. ANALYSIS

Plaintiff was 42 years old when she protectively applied for benefits on September 7, 2011, alleging that she became disabled on November 15, 2010 when she felt a sudden numbness and pain in her shoulders while working as a mail carrier. (Tr. at 634, 726). According to Plaintiff, she suffers from several problems: a spine disorder, bipolar disorder (depressed type), right shoulder impingement

syndrome, bilateral carpal tunnel syndrome, chronic pain, and an inability to tolerate narcotic pain medications, along with a history of alcoholism. (Dkt. 24, p. 2.)

Plaintiff's claim was initially denied on December 1, 2011. (Tr. at 614.) On December 6, 2011, Plaintiff filed a written request for a hearing. (*Id.*) Represented by counsel, Plaintiff appeared and testified at a hearing on September 19, 2012, in Livonia, Michigan. (*Id.*) The ALJ denied Plaintiff's claim on December 14, 2012. (Tr. at 627.)

Plaintiff appealed on January 8, 2013, submitting a brief as well as new medical evidence generated after the hearing. (Tr. at 608-609; Dkt. 19, p. 7.) Although the new medical evidence was admitted into the record, it was not found to be material to the time period at issue on appeal. (Tr. at 2, 6.) The Appeals Council denied Plaintiff's request for review on February 12, 2014. (Tr. at 1-6.)

On April 13, 2014, Plaintiff filed her complaint against Defendant with this Court. (Dkt. 1.) After both parties filed their cross-motions for summary judgment (Dkts. 19, 22), Magistrate Judge Morris issued her report and recommendation recommending that Plaintiff's motion be denied (Dkt. 23). On August 14, 2015, Plaintiff timely filed the three objections to the report and recommendation that are now before this Court. (Dkt. 24.)

A.  The Social Security Act

The Social Security Act ("the Act") "entitles benefits to certain claimants who, by virtue of a medically determinable physical or mental impairment of at least a

year's expected duration, cannot engage in 'substantial gainful activity.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant qualifies as disabled "if []he cannot, in light of h[is] age, education, and work experience, 'engage in any other kind of substantial gainful work which exists in the national economy.'" *Combs*, 459 F.3d at 642 (quoting 42 U.S.C. § 423(d)(2)(A)).

Under the authority of the Act, the Social Security Administration (SSA) has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(4). The five steps are as follows:

> In step one, the SSA identifies claimants who "are doing substantial gainful activity" and concludes that these claimants are not disabled. [20 C.F.R.] § 404.1520(a)(4)(i). If claimants get past this step, the SSA at step two considers the "medical severity" of claimants' impairments, particularly whether such impairments have lasted or will last for at least twelve months. *Id.* § 404.1520(a)(4)(ii). Claimants with impairments of insufficient duration are not disabled. *See id*. Those with impairments that have lasted or will last at least twelve months proceed to step three.
>
> At step three, the SSA examines the severity of claimants' impairments but with a view not solely to their duration but also to the degree of affliction imposed. *Id*. § 404.1520(a)(4)(iii). Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the SSA's special list of impairments, or that is at least equal in severity to those listed. *Id*. § 404.1520(a)(4)(iii), (d). The list identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. *See Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). A person with such an impairment or an equivalent, consequently, necessarily satisfies the statutory definition of disability. For such claimants, the process ends at step three. Claimants with lesser impairments proceed to step four.
>
> In the fourth step, the SSA evaluates claimant's "residual functional capacity," defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). Claimants whose residual

> functional capacity permits them to perform their "past relevant work" are not disabled. *Id*. § 404.1520(a)(4)(iv), (f). "Past relevant work" is defined as work claimants have done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Id*. § 404.1560(b)(1). Claimants who can still do their past relevant work are not disabled. Those who cannot do their past relevant work proceed to the fifth step, in which the SSA determines whether claimants, in light of their residual functional capacity, age, education, and work experience, can perform "substantial gainful activity" other than their past relevant work. *See id*. § 404.1520(a)(4)(v), (g)(1). Claimants who can perform such work are not disabled. *See id*.; § 404.1560(c)(1).

*Combs*, 459 F.3d at 642–43.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that []he is precluded from performing h[is] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). If the analysis reaches the fifth step, the burden transfers to the Commissioner. *See Combs*, 459 F.3d at 643. At that point, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC and considering relevant vocational factors." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

Judicial review of the Commissioner's final decision is authorized pursuant to 42 U.S.C. § 405(g). If the Appeals Council denies review, then the ALJ's decision stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981. Judicial review, however, is circumscribed in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial

5

evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support the ALJ's conclusion." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (quotation marks omitted) (quoting *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001)). This substantial evidence standard is less exacting than the preponderance of evidence standard. *See Bass*, 499 F.3d at 509 (citing *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 246 (6th Cir. 1996)). For example, if the ALJ's decision is supported by substantial evidence, "then reversal would not be warranted even if substantial evidence would support the opposite conclusion." *Bass*, 499 F.3d at 509.

**B.     The ALJ's Decision Is Supported by Substantial Evidence**

Plaintiff raises three objections to the report and recommendation, namely, that Magistrate Judge Morris erred in: (1) finding that the ALJ properly discounted portions of treating physician Dr. Pinelli's opinion concerning Plaintiff's condition; (2) concluding that the ALJ properly evaluated all of Plaintiff's purported impairments in determining Plaintiff's residual functional capacity ("RFC"); and (3) affirming the ALJ's evaluation of Plaintiff's credibility as to Plaintiff's subjective complaints. (Dkt. 24, pp. 1-3.) As discussed below, none of these objections warrants disturbing Magistrate Judge Morris's recommendation.

   **1.     The ALJ Appropriately Discounted Portions of Dr. Pinelli's August 17, 2012 Assessment**

From 2010 to 2012, Dr. David B. Pinelli treated Plaintiff at the Pontiac Osteopathic Hospital ("POH") Regional Medical Center and the McLaren Regional

Medical Center for physical symptoms including shoulder, neck, and back pain. (*See* Tr. at 832-960, 989-97.) On August 17, 2012, Dr. Pinelli completed an assessment and evaluation of Plaintiff's physical capabilities. (Tr. at 989-92.) In this assessment, Dr. Pinelli stated that Plaintiff suffered from "significant cervical disc disease" and "knee pain." (Tr. at 990.)

In the assessment, Dr. Pinelli found that, in an eight-hour work day, Plaintiff could stand for up to two hours, sit for up to four hours, and walk for up to an hour. (Tr. at 989.) Moreover, Plaintiff could, in a 40-hour work week, occasionally lift up to 20 pounds and use her hands for simple grasping and fine manipulation. (Tr. at 990.) Plaintiff would, however, need to lie down for a substantial period of time during the day and "requires complete freedom to rest frequently without restriction." (Tr. at 991.) When prompted to "set forth objective medical evidence" to support his findings, Dr. Pinelli merely listed Plaintiff's diagnosed conditions: cervical radiculopathy, knee pain in the right knee, and carpal tunnel syndrome on the right side. (*Id.*) Dr. Pinelli concluded by noting that Plaintiff's conditions had been severe since 2005. (Tr. at 992.)

Plaintiff first objects that Magistrate Judge Morris should have recommended a remand because the ALJ did not give controlling weight to all portions of treating physician Dr. Pinelli's August 17, 2012 evaluation and assessment of Plaintiff's physical capabilities. (*Id.* at 1.) Specifically, in determining Plaintiff's residual functioning capacity, or RFC, Plaintiff asserts that the ALJ should have given controlling weight to Dr. Pinelli's opinion that Plaintiff could sit

7

for four hours and stand or walk for up to two hours continuously during an eight-hour workday, and that Plaintiff also needed the freedom to rest whenever she wanted. (*Id.* at 1-2.)

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375–76 (6th Cir.2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov.7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n. 1 (6th Cir.1987)). The ALJ may reject the opinion of a treating physician if it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992); *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov.7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232,

235 n. 1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376–77.

Where the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must nevertheless determine the degree of weight that should be afforded such opinion. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required explicitly to discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors

9

relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. App'x. 448, 450 (5th Cir., Jan.19, 2007).

Magistrate Judge Morris correctly concluded that that the ALJ gave good reasons for affording limited weight to portions of Dr. Pinelli's August 17, 2012 opinion when determining Plaintiff's RFC. In his opinion, the ALJ "assigned highly limited weight to the August 2012 opinion of Dr. Pinello [sic]". (Tr. 624.) The ALJ acknowledged that Dr. Pinelli was Plaintiff's treating physician, but the ALJ was troubled by contradictions between the August 2012 assessment and Dr. Pinelli's earlier evaluations of Plaintiff's conditions. (*Id.*) For example, while Dr. Pinelli reported in November 2011 that Plaintiff was unable to return to her "usual occupation due to the nature of her work [as a mail carrier]", he concluded in August 2012 that Plaintiff is capable of lifting up to 20 pounds over a sustained period of time. (*Id.*)

Moreover, the ALJ found that "the medical record does not appear to fully support such extensive limitations as opined to in August 2012". (*Id.*) The ALJ based this conclusion on several events in the medical record including Plaintiff's improvement after cervical spine surgery, minimal ongoing treatment for Plaintiff's shoulder and knee pain, and evidence of only a mild case of carpal tunnel syndrome that was resolved after release surgery was performed. (*Id.*) The ALJ also noted that there was a lack of objective medical evidence confirming any of the purported radicular symptoms. (*Id.*) Accordingly, the ALJ gave the August 2012 opinion highly limited weight while assigning greater weight to the November 2011 opinion

because it was "generally supported by the record, particularly given such exertional level of [Plaintiff's] past work as a mail deliverer and evidence of some physical limitations." (Tr. at 624-625.)

Although the ALJ did not afford the August 17, 2012 assessment controlling weight, the RFC of Plaintiff found by the ALJ was "largely consistent with Dr. Pinelli's assessment" and in some respects more favorable to Plaintiff, as Magistrate Judge Morris notes. (Dkt. 23, p. 18). For example, with respect to lifting, Dr. Pinelli opines that Plaintiff can occasionally lift up to 20 pounds (Tr. at 990), while the ALJ limited Plaintiff to lifting five pounds on occasion (Tr. at 619). Moreover, both the RFC and Dr. Pinelli agree that Plaintiff can use her hands for fine manipulation. (*See* Tr. at 619, 990.)

The ALJ's RFC assessment differs from Dr. Pinelli's opinion in only two relatively minor ways. While Dr. Pinelli concluded that Plaintiff could stand for two hours and walk for one hour continuously in an eight-hour workday (Tr. at 989), the ALJ found that Plaintiff could "stand or walk with normal breaks for a total of two hours in the eight hour workday and can do so for only one-half hour at a time" (Tr. at 619). The ALJ also found that Plaintiff could "sit with normal breaks for a total of six hours in an eight-hour work day" for "only one-half hour at a time" (*Id.*) in contrast to Dr. Pinelli's assessment that Plaintiff could sit for up to four hours during an eight-hour workday (Tr. at 989.) The ALJ's incorporation of the need to change position every half hour differs from Dr. Pinelli's conclusion that Plaintiff required total freedom to rest whenever she chose, but not significantly.

The ALJ sufficiently explained his reasons for not affording greater weight to Dr. Pinelli's conclusions that Plaintiff could only sit for four hours during an eight-hour workday and would require the freedom to rest whenever she wanted. The ALJ acknowledged the relationship between Plaintiff and her treating physician, clarified that these conclusions were "inconsistent with the other substantial evidence in [the] case record," 20 C.F.R. § 404.1527(d)(2), and identified the evidence in the record supporting such a finding. (*See* Tr. 624-625.) Moreover, the ALJ continues over several paragraphs to analyze additional portions of the medical record in support of his RFC findings. (Tr. at 625.)

Finally, as Magistrate Judge Morris notes, Dr. Pinelli relies solely on Plaintiff's diagnoses as the justification for his August 17, 2012 conclusions. (Dkt. 23, p. 19.) This Court agrees that a list of diagnoses is not the equivalent of an opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" pursuant to 20 C.F.R. § 404.1527(d)(2). *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004). The ALJ was not required to give substantial weight to Dr. Pinelli's unsupported conclusions. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir.2009) ("Conclusory statements from physicians are properly discounted by ALJs."); *see also Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 175–76 (6th Cir. 2009) ("Where the opinion of a treating physician is not supported by objective evidence or is inconsistent with other medical evidence in the record, this Court generally will uphold an ALJ's decision to discount that opinion."); *Munson v. Astrue*, No. 11-12475, 2012 WL 4485824, at *12 (E.D. Mich.

Aug. 6, 2012) report and recommendation adopted sub nom. *Munson v. Comm'r of Soc. Sec.,* No. 11-12475, 2012 WL 4475445 (E.D. Mich. Sept. 27, 2012) (ALJ not required to give substantial weight to opinions that "merely list diagnoses, and fail to provide supporting clinical results or diagnostic findings.")

The Court finds that the ALJ did consider all the factors listed in 20 C.F.R. § 404.1527(d)(2) that were relevant to his assessment of Dr. Pinelli's opinion such as the relationship between Dr. Pinelli and Plaintiff, the supportability of the opinion, and the consistency of the opinion with respect to the record as a whole. The ALJ thus provided good reasons for his decision to afford highly limited weight to certain findings by Dr. Pinelli in determining Plaintiff's RFC. The determination of disability is the prerogative of the Commissioner, and not the doctor. *See Houston v. Sec'y of Health and Human Services*, 736 F.2d 365, 367 (6th Cir. 1984). Plaintiff's objection will be overruled.

### 2. The ALJ Considered Plaintiff's Impairments Alone and in Combination

Plaintiff next asserts that the ALJ erred in failing to consider all of Plaintiff's impairments in combination when he determined Plaintiff's RFC. (Dkt. 24, p. 2.) According to Plaintiff, she suffers from a spine disorder, bipolar disorder (depressed type), right shoulder impingement syndrome, bilateral carpal tunnel syndrome, chronic pain, inability to tolerate narcotic pain medications, and a history of alcoholism. (*Id.*) Plaintiff argues that the ALJ examined these impairments separately rather than in combination and thus failed to consider in formulating

13

her RFC how her impairments "lead to greater pain and dysfunction tha[n] the physical pathology alone would indicate." (*Id.*)

The Social Security Act requires the agency "to consider the combined effects of impairments that individually may be non-severe, but which in combination may constitute a medically severe impairment or otherwise evince a claimant's disability." *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988); *see also* 20 C.F.R. § 404.1523. The Sixth Circuit has indicated that an ALJ's analysis of a claimant's combined impairments will be found sufficient where (1) the ALJ referred to a "combination of impairments" in deciding the claimant did not meet the listings, (2) the ALJ referred to the claimant's "impairments" as not being severe enough to preclude performance of his past relevant work, (3) the ALJ's decision was made after careful consideration of the "entire record," or (4) all of the claimant's impairments were discussed individually in the decision. *See Gooch v. Sec'y of Health and Human Services*, 833 F.2d 589, 592 (6th Cir. 1987). "To require a more elaborate articulation of the ALJ's thought process would not be reasonable." *Id.*

The Sixth Circuit has also found that "[a]n ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings." *Hill v. Comm'r of Soc. Sec.*, 560 Fed. App'x. 547, 551 (6th Cir.2014) (quoting *Loy v. Sec'y of Health and Human Services*, 901 F.2d 1306, 1310 (6th Cir.1990)) (citing *Gooch v. Sec'y of*

14

*H.H.S.*, 833 F.2d 589, 592 (6th Cir.1987), cert. denied, 484 U.S. 1075, 108 S.Ct. 1050, 98 L.Ed.2d 1012 (1988)).

Here, the ALJ determined at step 2 that Plaintiff had the following severe impairments pursuant to 20 C.F.R. § 404.1520(c): 1) degenerative disc disease of the cervical spine causing central stenosis with radicular pain; 2) status post anterior cervical decompression fusion; 3) bilateral carpal tunnel syndrome; 4) right shoulder impingement; 5) bilateral knee pain with right meniscal tear; 6) bipolar disorder; 7) history of alcohol abuse; 8) anxiety disorder; 9) lumbar disorder; and 10) history of syncope and vertigo. (Tr. at 616.)

The ALJ then stated at step 3 that Plaintiff did "not have an impairment *or combination of impairments* that meets or medically equals the severity of one of the listed impairments...." (Tr. at 617) (emphasis added). The ALJ went on to discuss all of Plaintiff's alleged limitations, and made his RFC determination based on "careful consideration of the entire record." (Tr. at 618.) Moreover, the ALJ found that, as a result of her impairments, Plaintiff was unable to perform any past relevant work. (Tr. at 625.)

As both Magistrate Judge Morris and Defendant assert, the ALJ was clearly aware of his duty to consider the entire record, including Plaintiff's impairments alone and in combination, when making his findings. (*See* Dkt. 22, pp. 19-21, Dkt. 23, p. 19.) In fact, the ALJ references this obligation at least a dozen times throughout his opinion. (Tr. at 614-619, 625.) There is no question that the ALJ considered the combined effect of Plaintiff's ailments.

15

Plaintiff's objection consists of a general assertion that the ALJ failed to consider the cumulative effect of her impairments in determining Plaintiff's RFC. (Dkt. 24, p. 2.) Plaintiff reiterates what her impairments are, and asserts that, when considered in combination, they are worse than her medical records indicate. (*Id.*) However, Plaintiff does not point to specific evidence in the record to support this assertion, relying instead on an article published in the September 2004 issue of the *Harvard Mental Health Letter*. (*Id.* at 2, n. 1.) Plaintiff's generalized objection is insufficient to warrant disturbing the ALJ's analysis or the conclusions of Magistrate Judge Morris.

. The diagnosis of an impairment does not speak to its degree of severity, and Plaintiff bears the burden of showing the alleged loss of function. *See Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988). Plaintiff has not done so, nor has Plaintiff established that the ALJ failed to consider her impairments in combination. Accordingly, her objection will be overruled.

### 3. The ALJ's Credibility Determination is Supported by Substantial Evidence

Finally, Plaintiff argues that the ALJ erred in finding that her claimed limitations were not supported by the medical evidence and were less than fully credible. (Dkt. 24, p. 3.) Specifically, Plaintiff argues that the ALJ did not give sufficient consideration "to the combination of underlying bipolar disorder-depressed type, and painful spine disorder, with history of alcoholism and inability to tolerate pain medications" when making his credibility determination. (*Id.*) Plaintiff concludes that her "pain and other subjective complaints are reasonably

16

related to her underlying medical impairments, supported by her treating physicians, and consistent with the record as a whole." (*Id.* at 4.)

"There is no question that subjective complaints of a claimant can support a claim for disability, if there is also evidence of an underlying medical condition in the record." *Jones*, 336 F.3d at 475 (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 150–51 (6th Cir. 1990)). However, "an ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability." *Id.* at 476 (citing *Walters*, 127 F.3d at 531). Notably, an ALJ's credibility determinations about the claimant are to be given great weight, "particularly since the ALJ is charged with observing the claimant's demeanor and credibility," but they must also be supported by substantial evidence. *See Walters*, 127 F.3d at 531 (citations omitted).

Here, the ALJ acknowledged that Plaintiff's impairments could produce her reported symptoms, but reasonably found that those symptoms were not as severe or intense as Plaintiff alleged. (Tr. at 620-626.) Namely, the ALJ held that "recent treatment notes" do not support the "extreme limitations" that Plaintiff alleged in her testimony. (Tr. at 620.) In support of this finding, the ALJ thoroughly discussed why he discounted Plaintiff's testimony that her symptoms were disabling, giving the following reasons:

> 1. Plaintiff's surgical repair of her cervical spine, and her improved balance and coordination, bladder incontinence, minimal bicep and tricep weakness, and normal upper and lower extremity strength as reported in October and November 2011, and June 2012. (*Id.*)

2. A series of unremarkable imaging studies showing that Plaintiff's spine was normal and well-aligned, with satisfactory decompression, prompting one doctor to recommend that Plaintiff see other specialists to explore "other etiologies of her pain." (*Id.* at 621.)

3. The lack of any diagnostic results confirming Plaintiff's purported radiculopathy. (*Id.*) Although a December 2010 EMG/nerve conduction study showed mild bilateral carpal tunnel syndrome, Plaintiff improved with corticosteroid injections in January 2011. (*Id.*) Plaintiff then underwent right carpal tunnel release surgery in November 2011, resulting in the resolution of her carpal tunnel symptoms by January 2012. (*Id.*) No treatment was recommended for Plaintiff's left hand. (*Id.*)

4. No invasive treatment recommendations in the record for Plaintiff's purported ongoing hand pain and numbness resulting in her inability to carry more than one gallon of milk with both hands. (*Id.*)

5. No evidence of follow-up treatment after Plaintiff's arthroscopic surgery of her right knee in January 2012, and a June 2012 finding of intact passive range of notion of the knees and normal muscle strength of the bilateral lower extremities. (*Id.* at 622.) No active complaint with regard to Plaintiff's knees was reported during a September 2012 doctor's visit. (*Id.* at 623.)

6. No medical evidence of a neurological impairment that would cause Plaintiff's syncope and vertigo symptoms or of any abnormality with regard to Plaintiff's respiratory and cardiologic examinations. (*Id.*)

7. Only minimal evidence of treatment for Plaintiff's purported bipolar disorder. An initial psychiatric evaluation in November 2011 found Plaintiff to be alert and oriented, and was generally inconsistent with Plaintiff's reported symptoms. (*Id.*) Moreover, Plaintiff reported being sociable and able to go out with friends, walk her dogs, read the Bible, listen to the radio, watch movies, do crafts, attend church regularly, and make regular trips to the grocery store. (*Id.*)

8. Recent treatment notes documenting that Plaintiff has discontinued all use of alcohol. (*Id.*)

In her objection, Plaintiff does not confront this evidence supporting the

ALJ's credibility determination. (*See* Dkt. 24, pp. 3-4.) Instead, Plaintiff makes

general assertions about the severity of her symptoms when considered in combination, and relies on her own subjective complaints. (*See id.*) Given that an ALJ's credibility determinations are to be given "great weight," there is simply not enough contrary evidence in the record to discard the ALJ's credibility determination. This objection is not well-taken and is therefore overruled.

## II.    CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Magistrate Judge Morris's report and recommendation of July 30, 2015 (Dkt. 23) is **ACCEPTED** and **ADOPTED**. Plaintiff's objections (Dkt. 24) are **OVERRULED** in their entirety.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment (Dkt. 19) is **DENIED** and Defendant's motion for summary judgment (Dkt. 22) is **GRANTED**.

**IT IS FURTHER ORDERED** that the findings and conclusions of the Commissioner are **AFFIRMED**.

**SO ORDERED**.

s/Terrence G. Berg  
TERRENCE G. BERG  
UNITED STATES DISTRICT JUDGE

Dated:  November 20, 2015

**Certificate of Service**

I hereby certify that this Order was electronically submitted on November 20, 2015, using the CM/ECF system, which will send notification to each party.

By:  s/A. Chubb
     Case Manager